kaw

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 06-40116-JAR |
| | ) | |
| MATTHEW REDDING, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Defendant Matthew Redding is charged in a two-count Indictment with conspiracy to sell cocaine and possession with intent to distribute cocaine. On January 14, 2008, the Court conducted a hearing on defendant's discovery and suppression motions. [1]  The Court now considers defendant's Motion for a Bill of Particulars (Doc. 21) and Motion to Suppress (Doc. 28).  For the reasons stated below, defendant's Motion for a Bill of Particulars is granted in part, and his Motion to Suppress is denied.

## I.  MOTION TO SUPPRESS

During the hearing, the government provided testimony from detective Michael Life of the Jackson County Police Department.  Detective Life testified that on the morning of January 24, 2006, he and another officer drove by defendant's home to pick up his trash.  Life testified that defendant was on probation at that time, and after receiving information from an informant that defendant was still in the business of illegal drugs, Life believed that a search of defendant's trash could lead to evidence of a drug crime.  Detective Life and the other officer noticed trash

---

[1]There is a status conference set for March 3, 2008, where the Court will rule on defendant's remaining discovery motions.

bags on the curb outside of defendant's fenced front yard.  The detectives, without disturbing the

home or the occupants, took the trash bags and found drug paraphernalia and other evidence of

drug use in the bags.

      The officers obtained a search warrant for defendant's house based partly on the evidence

found in the trash bags.  While searching defendant's house, the officers found a safe.  Because

the officers did not have the equipment to open the safe there, the safe was taken to the police

station to be opened.  Inside the safe, officers found further evidence of drug transactions,

defendant's social security card, and other documents belonging to defendant's brother.

      Defendant contends that the search of his trash violated his Fourth Amendment right.  He

claims that officers entered the curtilage of his home to obtain the trash bags, which were inside

his fenced yard.  In *California v. Greenwood*,[2] the Supreme Court ruled that the Fourth

Amendment does not prohibit the warrantless search of trash left outside the curtilage.[3]  The

curtilage is the "area immediately surrounding a dwelling house."[4]  The Supreme Court further

defines the curtilage as the area where "intimate activity associated with the sanctity of man's

home and the privacies of life" are conducted.[5]  Whether an area falls within the curtilage is

determined by examining the proximity of the area to the home, inclusion of the area within an

enclosure surrounding the home, the nature and uses of the area, and steps taken to protect the

area from observation by a passerby.[6]  These factors, however, as cautioned by the Supreme

---

[2]486 U.S. 35 (1988).

[3]*Id.* at 37.

[4]*United States v. Dunn*, 480 U.S. 294, 300 (1987).

[5]*Id.* at 300.

[6]*United States v. Long*, 176 F.3d 1304, 1308 (10th Cir. 1999).

Court, are merely analytical tools to guide a decision that is very fact intensive.[7]

The evidence proffered by the government tends to show that the trash bags were outside the curtilage of defendant's home.  Detective Life testified that the trash was picked up on the front curb outside the fence around defendant's front yard.  Furthermore, after reviewing the photograph of defendant's house it is readily noticeable that his fence does not extend to the street.  Rather, defendant's yard ends at the fence.  Outside the fenced-in area is a strip of land, approximately six feet wide, where a sidewalk would generally be placed.  Detective Life testified that he and the other officer picked up the trash bags that morning in the six-foot wide area outside the fence.  As such, the trash bags were not within the curtilage of the house, and accordingly the Fourth Amendment was not offended.

Even if the trash bags were in the curtilage, the defendant must show that he had a reasonable expectation of privacy in them.[8]  What a person knowingly exposes to the public, even if in his home, is not afforded Fourth Amendment protection.[9]  Where trash is accessible to the public, courts have not recognized a reasonable expectation of privacy because snoops, scavengers, and other members of the public may readily sort through it.[10]  Here, even if the Court found that the trash bags were located within the curtilage, defendant has not shown that he had a reasonable expectation of privacy in the trash for a number of reasons.

First, the officers picked up the trash on the local trash pick-up day, therefore any trash

---

[7]*Id*. at 1308 (citing *Dunn*, 480 U.S. at 301).

[8]*Id*.

[9]*United States v. Hedrick*, 922 F.2d 396, 399 (7th Cir. 1991).

[10]*United States v. Shanks*, 97 F.3d 977, 980 (7th Cir. 1996) (citing *Hedrick*, 922 F.2d at 400).

3

out by the curb was there because the homeowner was aware that the city would be picking up the trash that morning.  Second, as evidenced by the fenced-in front yard, defendant released any expectation of privacy he had in his trash when he placed the bags outside of his fence.  And third, arguably if a person retained an expectation of privacy in his trash bags, that person would not leave his trash bags out overnight outside of his fenced-in front yard.  Thus, defendant cannot show that he had a reasonable expectation of privacy in the trash bags outside of his fenced-in front yard.  Defendant's motion is consequently denied.

## II.   *BILL OF PARTICULARS*

"'The purpose of a bill of particulars is to inform the defendant of the charges against him with sufficient precision to allow him to prepare his defense.'"[11]  "A bill of particulars is not necessary if 'the indictment sets forth the elements of the offense charged and sufficiently apprised the defendant of the charges'" against him.[12]  A bill of particulars is not a discovery device, which can be used to obtain the government's evidence; instead, it is a device used to obtain the theory of the government's case where the indictment is too vague.[13]  Furthermore, where the government has provided discovery in abundance, defendants cannot assert that a bill of particulars is necessary because review of the documents would be copious or burdensome.[14] Whether to grant a bill of particulars is within the Court's discretion,[15] and will not be granted

---

[11]*United States v. Tyler*, 42 F. App'x 186, 190 (10th Cir. 2002) (quoting *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996)).

[12]*United States v. Levine*, 983 F.2d 165, 167 (10th Cir. 1992) (quoting *United States v. Dunn*, 841 F.2d 1026, 1030 (10th Cir. 1988)).

[13]*Tyler*, 42 F. App'x at 190.

[14]*See Ivy*, 83 F.3d at 1282.

[15]*Dunn*, 841 F.2d at 1029.

4

unless defendant can show prejudice.[16]

Defendant contends that the Indictment is lacking because it fails to tell him who the alleged co-conspirators are and what overt acts were completed in furtherance of the conspiracy. Defendant concedes that a bill of particulars is not needed if discovery has been provided, but maintains that in this case a bill of particulars is necessary because the government has provided boxes of discovery naming many alleged drug dealers and other persons.  Therefore, defendant is unable to determine which persons are among the alleged co-conspirators.  The government asserts that the defendant has the necessary information to prepare a defense because it has provided the entire investigative file.  The government maintains that the defendant seeks a bill of particulars to discover the evidence on which it intends to rely, not to aid in his defense or understanding of the charges.  Moreover, defendant cannot show that he will suffer any prejudice resulting from the Indictment.

The two-page Indictment charges defendant with conspiring with "known and unknown" persons in the distribution of crack cocaine.  The Indictment alleges that defendant's acts begun in April 2004 and continued until October 2006, over two years.  There are no allegations of overt acts in the Indictment,[17] because that is not necessary.  But, what is necessary is information detailing the alleged co-conspirators known to the government.  Here, the "known" co-conspirators need to be revealed to the defendant[18] so that defendant can better defend his

---

[16]*United States v. Wright*, 826 F.2d 938, 942 (10th Cir. 1988).

[17]*United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978); *United States v. Feola*, 651 F. Supp. 1068, 1133 (S.D.N.Y. 1987).

[18]*See United States v. Anderson*, 31 F. Supp. 2d 933, 938 (D. Kan. 1998); *United States v. Vastola*, 670 F. Supp. 1244, 1260 (D.N.J. 1987).

case either by rebutting the alleged co-conspirator statements or by confronting any witnesses against him.  To the extent that the information about the alleged "known" co-conspirators is not readily available in the record disbursed to defendant, the government should direct the defendant to that information either within the record or by providing the defendant with a list of the known co-conspirators.

**IT IS THEREFORE ORDERED THAT** Defendant's Motion to Suppress is **DENIED** and Defendant's Motion for Bill of Particulars is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED**.

Dated this day  7th  of February, 2008.

 S/ Julie A. Robinson
**Julie A. Robinson**
**United States District Judge**

Memorandum and Order in *United States v. Matthew Redding*, 06-40116-JAR.

6